UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-00543-FDW-DCK

| | |
|---|---|
| JTH TAX LLC,<br>d/b/a LIBERTY TAX SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES GAUSE, and<br>GAUSE ENTERPRISES LLC,<br>d/b/a MR. CHARLES TAX,<br>d/b/a MR CHARLES TAX<br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court following the filing of Plaintiff's Motion for Summary Judgment, filed on December 7, 2022. (Doc. No. 60). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**, to the extent it seeks summary judgment against Defendant Charles Gause, and **DENIED AS MOOT**, to the extent it seeks summary judgment against Defendant Gause Enterprises LLC.

## I.  BACKGROUND[1]

Plaintiff JTH Tax LLC d/b/a Liberty Tax Services ("**Plaintiff**") filed this action against Defendants Charles Gause ("**Mr. Gause**") and Gause Enterprises, LLC d/b/a Mr. Charles Tax ("**Gause Enterprises**," and collectively with Mr. Gause, "**Defendants**"), asserting claims arising from two franchise agreements (collectively, the "**Agreements**"). (Doc. No. 1, p. 1).

Liberty Tax Service® ("**Liberty**") provides professional income tax preparation and filing services to the public through its franchisees located across the United States. (Doc. No. 1, p. 3).

---

[1] The background set forth herein is taken from a combination of the parties' briefing and attached exhibits. The background is taken in the light most favorable to Defendants as the nonmoving party.

Plaintiff is a franchisor of Liberty service centers across the country, including North Carolina. (Id. at 3). As such, Plaintiff enters into franchise agreements with franchisees, who may then operate income tax preparation service centers in a specified geographic territory. (Id. at 3–4). Pursuant to these franchise agreements, franchisees can use Plaintiff's trademarks, service marks, logos, and derivations thereof, (the "**Marks**"), and they are given access to Liberty's propriety business methods, including the Operations Manual, methods of operating a franchise, customer information, and marketing information ("**Confidential Information**"). (Id. at 4).

Defendant Charles Gause formed Gause Enterprises in September 2013, and he serves as its sole member and manager. (Doc. No. 61-5, p. 8). On July 1, 2013, Mr. Gause entered into a franchise agreement with Plaintiff for NC256, a territory located in Charlotte, North Carolina ("**NC256 Agreement**"). (Doc. No. 61-2). Thereafter, Mr. Gause operated a Liberty office from 7808 S. Tryon Street, Charlotte, North Carolina (the "**256 Office**"). (Doc. No. 1, p. 4). He renewed the NC256 Agreement on March 28, 2019, for a term of five years. (Doc. No. 61-4).

Mr. Gause entered into a second franchise agreement with Plaintiff on November 10, 2016, for NC239 ("**NC239 Agreement**"), after which he began operating his second Liberty office from 5716 Wyalong Drive, Suite G, Charlotte, North Carolina (the "**239 Office**," and collectively with the 256 Office, the "**Franchise Offices**"). (Doc. No. 61-3; Doc. No. 1, p. at 4–5). Upon signing the Agreements, Mr. Gause received a copy of Plaintiff's proprietary Operations Manual. (Doc. No. 1, p. 5; Doc. No. 26, p. 4). The terms of the Agreements established each signing party's rights and obligations, both during the franchise relationship and after the Agreement's termination. (See Docs. Nos. 61-2, 61-3, 61-4).

The relationship between the parties—which, pursuant to the NC256 Agreement was to last through March 2024, and through November 2019 under the NC239 Agreement—began to

deteriorate in 2020. Defendant admits that in April or May of 2020, he decided to leave Liberty, (Doc. No. 61-5, p. 42), and that he "voluntarily left" Liberty in December 2020, (Id. at 58). Plaintiff sent Mr. Gause Notices, on September 8 and again on September 14, informing Mr. Gause of alleged breaches of the Agreements and instructing that he cure any identified breach ("**Notices to Cure**"). (Docs. Nos. 61-1, 61-7, 61-8). Though Defendant received both Notices to Cure, Mr. Gause failed to respond. (Doc. No. 26, p. 4–5). On March 3, 2021, Plaintiff informed Mr. Gause that it terminated the Agreements for Mr. Gause's failure to cure the identified breaches,

> which include, but are not limited to, [his] failure to maintain hours specified in the Operations Manual, [his] failure to submit [his] Gross Receipt Report, [his] failure to operate [his] offices for three (3) business days during this tax season, [his] failure to open an office by January 2, 2021, and [his] failure to pay amounts owing to Liberty.

(Doc. No. 61-9, p. 1) ("**Termination Letter**"). This Termination Letter also reiterated Mr. Gause's post-termination obligations as outlined therein and in the Agreements. (Id. at 1).

In addition to Gause Enterprises, Mr. Gause is also the sole member and manager of his insurance agency, Gause & Associates. (Doc. No. 61-5, p. 8). Defendant testified that from December 2020—prior to the termination—through March 2021—after the termination—he operated Gause Enterprises from his Gause & Associates office, located at 9731-F Southern Pine Boulevard, Charlotte, North Carolina, 28273. (Id. at 9). During that time and through 2021, Defendant prepared and filed tax returns from that location. (Id. at 27; see also Docs. Nos. 61-13, 61-14). However, following this Court's adoption of the parties' Stipulation of Preliminary Injunction, (Doc. No. 43), Mr. Gause testified that he only filed tax returns from his home address, 7016 McLothian Lane, Huntersville, North Carolina 28078. (Doc. No. 61-5, p. 26). Plaintiff also asserts that Mr. Gause has failed to return the Operations Manual, customer lists, tax returns, files, and other related records ("**Confidential Information**"), as required, nor has he paid the amounts owed at the time of the termination—including outstanding franchise fees, advertising fees, and

3

royalties. (Doc. No. 1, p. 10–11). Finally, on November 15, 2022, days after his deposition occurred on November 11, (Doc. No. 61-5, p. 1), Mr. Gause filed Articles of Dissolution with the North Carolina Secretary of State to dissolve Defendant Gause Enterprises LLC, listing the dissolution's effective date as November 9, 2022. (Doc. No. 61-15).

Plaintiff filed the Complaint in this action on October 13, 2021, alleging nine claims:

(I)     Breach of the Franchise Agreement (Monetary Claim) (Against Gause);
(II)    Breach of the Franchise Agreements (Equitable Claim) (Against Gause);
(III)   Tortious Interference with Contract (Against Gause Enterprises);
(IV)    Violation of Defend Trade Secrets Act of 2016 ("**DTSA**") (Against Defendants);
(V)     Common Law Conversion (Against Gause);
(VI)    Unjust Enrichment/Restitution (Against Defendants);
(VII)   Unfair Competition (Against Defendants);
(VIII)  Request for Preliminary Injunction (Against Defendants); and
(IX)    Request for Permanent Injunction (Against Defendants).

(Doc. No. 1). Plaintiff also filed a Motion for Temporary Restraining Order ("**TRO**") and Preliminary Injunctive Relief. (Doc. No. 4). Although Plaintiff's Motion was initially denied, (see Doc. No. 8), the Court granted Plaintiff's Motion for Temporary Restraining Order on November 1, 2021. (See Doc. No. 12). On November 15, 2021, the Temporary Restraining Order expired, and on December 8, 2021, the parties filed their Stipulation of Preliminary Injunction. (Doc. No. 25). Then, on January 20, 2022, Defendants filed their Answer, (Doc. No. 26), raising two counterclaims for breach of contract and attorney's fees, and Plaintiff subsequently filed its Motion to Dismiss Defendants' Counterclaims. (Doc. No. 30). On August 15, 2022, this Court granted Plaintiff's Motion to Dismiss Defendants' Counterclaims and adopted the Stipulation of Preliminary Injunction, thereby resolving Count VII of Plaintiff's Complaint. (Doc. No. 43).

Up to this point, Defendants were represented by an attorney. However, on September 22, 2022, Defendants' attorney moved to withdraw. (Doc. No. 44). After initially denying this Motion, (Doc. No. 45), Magistrate Judge David Keesler granted Defendants' Second Motion to Withdraw on September 30, but he warned that Defendant Gause Enterprises would not be

permitted to proceed without counsel and advising that Defendant Gause Enterprises promptly retain representation. (Doc. No. 48).[2]

On December 7, 2022, Plaintiff filed a Motion for Default Judgment, (Doc. No. 58), which this Court construed instead as a Motion for Entry of Default. (Doc. No. 58). Defendants jointly filed a *pro se* Response on December 19, 2022, (Doc. No. 62), and Plaintiff filed its Reply on December 20, 2022, (Doc. No. 63). On March 3, 2023, this Court entered an Order denying Plaintiff's Motion for Default Judgment as against Mr. Gause. (Doc. No. 64, p. 4). However, the Court granted the Motion as to the corporate Defendant, because the Court found Gause Enterprises' repeated failure to comply with court Orders to retain counsel constituted its failure to "otherwise defend." (Doc. No. 64, p. 3–4). Accordingly, the Clerk entered default against Gause Enterprises pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. No. 65).

Also on December 7, Plaintiff filed the instant Motion in the Alternative for Summary Judgment. (Doc. No. 60). Defendants filed their joint *pro se* Response on December 19, and Plaintiff filed its Reply on December 20. (Docs. Nos. 62, 63). Having entered default against Gause Enterprises, on March 3, the Court denied Plaintiff's Motion for Summary Judgment as moot against the corporate Defendant. (Doc. No. 64, p. 5). Turning to Mr. Gause, the Court entered a Roseboro Notice to inform him of his right to respond to Plaintiff's Motion for Summary Judgment. (Id. at 5–6). Thus, the Court continued the trial to the term beginning on May 1, 2023, to give Mr. Gause the opportunity to file an additional response. (Doc. No. 64, p. 6). The deadline for doing so has now passed, and Mr. Gause has not filed any further response. Accordingly, Plaintiff's Motion for Summary Judgment against Defendant Charles Gause is now ripe for ruling.

---

[2] This admonition was one of many similar notices, warnings, and Orders, to retain counsel for the corporate Defendant Gause Enterprises. (See Docs. Nos. 45, 48, 49, 52, 53). Gause Enterprises' failure to do so resulted in the entry of default against it pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. No. 64).

5

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

6

the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50. In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

### III. ANALYSIS

Plaintiff moves for summary judgment on its seven claims against Defendant Charles Gause: (I) breach of the Agreements (monetary); (II) breach of the Agreements (equitable); (IV) violation of the DTSA; (V) common law conversion; (VI) unjust enrichment/restitution; (VII) unfair competition; and (IX) request for permanent injunction.[3] As such, the Court will address each cause of action in turn.

#### A. Breach of the Franchise Agreements (Count I)[4]

Plaintiff's Complaint alleges Mr. Gause materially breached, both during the franchise relationship and post-termination, fourteen separate terms of the Franchise Agreements. These provisions relate to operating hours, gross receipt reporting, Liberty's right to terminate, identifying as a former Liberty Tax franchisee, covenants not to compete, covenants not to solicit, covenants not to lease, and the disclosure and use of Confidential Information. Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or

---

[3] As explained above, Defendants' Counterclaims have been dismissed, (Doc. No. 43), and Count VIII of Plaintiff's Complaint, seeking a preliminary injunction against all Defendants, has been resolved, (Doc. No. 43; Doc. No. 25). Further, Plaintiff only raises Count III, tortious interference, against Defendant Gause Enterprises. (Doc. No. 1, p. 15–17). Accordingly, this Order addresses the remaining claims against Defendant Charles Gause.
[4] Plaintiff's equitable claim for breach of the Franchise Agreements, Count II, is addressed in Section III.F below.

7

damage to the plaintiff caused by the breach of obligation." Western Insulation, LP v. Moore, 316 F. App'x 291, 297 (4th Cir. 2009) (citing Filak v. George, 594 S.E.2d 610, 614 (Va. 2004); Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006)). In analyzing the second element, "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Berry v. Klinger, 300 S.E.2d 792, 796 (Va. 1983) (quoting Globe Co. v. Bank of Boston, 140 S.E.2d 629, 633 (Va. 1965)). The remedy for breach of contract "is to make amends or reparations by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed." Appalachian Power Co. v. John Stewart Walker, Inc., 201 S.E.2d 758, 767 (Va. 1974).

Here, the first and third elements are satisfied. The parties do not dispute that the Agreements were valid and enforceable contract. (Doc. No. 61-5, p. 62).[5] Nor does Mr. Gause attempt to argue that the third element is not satisfied; nowhere in his Response does he challenge—or even mention—Plaintiff's allegations of injury and damage resulting from the alleged breaches.[6] Rather, Mr. Gause's Response merely declares:

> Liberty tax operated its franchise with reckless abandon which caused me to lose business and ultimately go out of business.
>
> Liberty tax is taking the position that regardless of how they ran their franchise that they will file suit against any Franchisee that leaves without their permission.
>
> I did not intentionally breach any agreement. And was not aware of any breach until I received the lawsuit in this matter.
>
> Because of Liberty's recklessness they should not be allowed to use a contract to obtain monies from their Franchises and summary judgment should be awarded in

---

[5] Mr. Gause appears to argue the Agreements were not enforceable because he "should have the option to terminate" based on Plaintiff's alleged breaches. (Doc. No. 61-5, p. 63). However, this Court has already dismissed Defendants' Counterclaims—alleging Plaintiff breached the Agreements—finding instead that "Defendants' nonsensical pleading" failed to allege any viable breaches. (Doc. No. 43, p. 5). (Doc. No. 62, p. 3–4). Because Mr. Gause failed to introduce any additional evidence whatsoever in support of this same argument, it fares no better here.

[6] Instead, Mr. Gause attempts to argue that he was injured because Plaintiff "operated its franchise with reckless abandon which caused [him] to lose business and ultimately go out of business." (Doc. No. 62, p. 3). This unsupported and conclusory allegation, however, fails to demonstrate a genuine dispute of material facts as to Plaintiff's claim.

the amount of 1 million dollars to deter them from using this type of practice. And subsequently their motion for summary judgment should be denied.

(Doc. No. 62, p. 3–4). However, this conclusory statement fails to create any genuine issues of material facts related to whether Mr. Gause breached the terms of the Agreements.

Instead, it is clear based on the record—and based on his own deposition testimony—that Mr. Gause breached multiple terms of the Agreements.[7] Mr. Gause acknowledges his Agreements for both the 239 and 256 Offices were valid through 2021 and 2024 respectively, (Doc. No. 61-5, p. 62), but he testified that he "voluntarily left" his relationship with Plaintiff in December 2020. (Doc. No. 61-5, p. 57–58). However, under the express terms of the contracts, Mr. Gause was only permitted to terminate the Agreements "by not renewing," and even following such nonrenewal, he was still required to comply with the post-termination provisions therein. (Doc. No. 61-3, p. 15). After his unilateral and uncommunicated decision to "leave" his franchise relationship, but during the term of the Agreements, he purchased and began using a non-Liberty tax preparation software in violation of Section 6.g of the Agreements. (Doc. No. 61-5, p. 25; Doc. No. 61-3, p. 11). Further, Mr. Gause admits that he violated Section 6.e—establishing the required Operating Hours, (Doc. No. 61-5, p. 56; Doc. No. 61-3, p. 11); that he filed tax returns from his Gause & Associates office on Southern Pine Boulevard from December 2020 through March 2021, in violation of Section 10.a—the "In-Term Covenant Not to Compete," (Doc. No. 61-5, p. 30; Doc. No. 61-3, p. 18); and that he did not pay the required fees and royalties after he "left" the relationship in December 2020, in violation of Sections 4.d, 4.f, and 4.h—the "Fees and Payments" provisions of the Agreements, (Doc. No. 61-5, p. 64; Doc. No. 61-3, p. 5–6).

---

[7] Upon comparison of the terms of the three Franchise Agreements—NC256, NC239, and the NC256 Renewal Agreement—the Court finds they are substantially similar. (Docs. Nos. 61-2, 61-3, 61-4). As such, the Court cites only to the NC239 Franchise Agreement.

9

In addition, Mr. Gause testified that he violated the following Post-Termination Obligations: he kept his Liberty phone number, in violation of Section 9.e, (Docs. Nos. 61-5, p. 78; 61-3, p. 17); he recruited and hired employees he met at Plaintiff's tax class, in violation of Section 10.d—the Covenant Not to Solicit, (Doc. No. 61-5, p. 94; Doc. No. 61-3, p. 18); and he filed tax returns for former Liberty customers from within twenty-five miles of his NC256 and NC239 Offices, in violation of Section 10.b—the Post-Term Covenant Not to Compete, (Doc. No. 61-5, p. 33; Doc. No. 61-3, p. 18; Docs. Nos. 61-11, 61-12). Accordingly, Mr. Gause's own testimony demonstrates he breached multiple terms of the Agreements, both before and after his franchise relationship was terminated on March 3, 2021.

Mr. Gause's sole argument in opposition to these facts is that he "did not intentionally breach any agreement," and "was not aware of any breach until [he] received the lawsuit in the matter." (Doc. No. 62, p. 3). However, Mr. Gause does not present any evidence from which a reasonable jury could find that he did not breach the aforementioned terms of the Agreements. Therefore, because there is no genuine issue of material fact, Plaintiff is entitled to summary judgment as a matter of law on its Breach of the Franchise Agreements (Count I) claim.[8]

### B. Violation of the Defend Trade Secrets Act of 2016 (Count IV)

Plaintiff next alleges Mr. Gause misappropriated its trade secrets in violation of the DTSA. The DTSA establishes that the "owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "To prevail on such a claim, a plaintiff must accordingly establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce."

---

[8] Having determined Mr. Gause breached the provisions discussed above, the Court need not address the additional terms allegedly violated.

dmarcian, Inc. v. dmarcian Europe BV, 60 F.4th 119, 141 (4th Cir. 2023) (citing Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 905 (3d Cir. 2021)).

The DTSA defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . methods, techniques, processes, procedures, programs, or codes" for which "the owner thereof has taken reasonable measures to keep such information secret; and the information derives independent economic value, . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1893(3). The DTSA defines misappropriation as the "disclosure or use of a trade secret . . . without express or implied consent," where the defendant either "used improper means to acquire the knowledge of the trade secret," or "at the time of disclosure or use, knew . . . the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy . . . or limit the use of the trade secret." 18 U.S.C. § 1839(5)(A)–(B). Further, "improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy . . . ." 18 U.S.C. § 1839(6)(A).

Plaintiff asserts its Confidential Information[9] constitutes trade secrets, and that Mr. Gause misappropriated these trade secrets when he breached his duty to maintain the secrecy of the Confidential Information, when he hired and trained his employees, and when he continued to serve Plaintiff's customers after the termination of the Agreements. As above, Mr. Gause did not specifically respond to this allegation in his Response. (Doc. No. 62). Again, his unsupported and conclusory assertions are without merit, and they fail to present any evidence from which a jury could find in his favor.

---

[9] This Confidential Information includes Plaintiff's Operations Manual, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, customer information, and customer records.

Here, the evidence demonstrates that Mr. Gause misappropriated Plaintiff's trade secrets in violation of the DTSA. First, Plaintiff's Operations Manual, training materials, training programs, specific methods of operation, marketing strategies and programs, and customer information, all constitute trade secrets under the DTSA definition. Further, Plaintiff has taken reasonable measures to keep this information secret by only disclosing this information to franchisees following the execution of a franchise agreement, prescribing the permissible use of this information, prohibiting the disclosure or use of its Confidential Information beyond the scope of the franchise agreement, and providing for specific procedures for returning the Confidential Information following the termination of a franchise agreement. (Doc. No. 61-3, p. 20, 17–18). Further, this information derives independent economic value from not being known or readily ascertainable. Plaintiff has spent significant time and resources compiling their customer records and creating their operating, training, and marketing strategies, and Mr. Gause's own use of this information demonstrates that access to customer records provides economic value. When misappropriated, competitors can then contact and poach Plaintiff's clients. Accordingly, the records in Plaintiff's Confidential Information constitute protectable trade secrets under the DTSA.

Second, the record demonstrates there is no genuine issue as to whether Mr. Gause misappropriated these trade secrets. Mr. Gause knew, or had reason to know, that he acquired the Confidential Information "under circumstances giving rise to a duty to maintain the secrecy . . . [and] limit the use" of that information, 18 U.S.C. § 1839(5)(B)(II), because he acknowledged and agreed to this duty when he signed the Agreements. (Docs. Nos. 61-2, p. 16; 61-3, p. 20; 61-4, p. 20). Mr. Gause then breached this duty by violating In-Term Covenant Not to Compete, the Post-Termination Covenant Not to Solicit, and the Post-Term Covenant Not to Compete, as discussed above. (See Doc. No. 61-3, p. 18). Thus, by hiring and training his employees, by filing tax returns

12

for Plaintiff's customers through Gause Enterprises—both during the term of his Agreements and following their termination—and by using Plaintiff's trade secrets beyond the scope of the Agreements, Mr. Gause misappropriated Plaintiff's trade secrets.

Finally, there is no dispute that the trade secrets implicate interstate commerce because Plaintiff uses its Confidential Information with franchisees around the country, and many individuals for whom Plaintiff and Mr. Gause provided tax services have assets in multiple states. (Doc. No. 1, p. 3; see also Doc. No. 61-5, p. 41, 80). Thus, Plaintiff has demonstrated that Mr. Gause misappropriated its trade secrets in violation of the DTSA. Mr. Gause does not provide any evidence or argument showing otherwise, and because there is no such evidence on the record, there is no genuine issue of material fact. Therefore, Plaintiff is entitled to summary judgment as a matter of law on its Violation of Defend Trade Secrets Act of 2016 (Count IV) claim.

### C.  Common Law Conversion (Count V)

In its fifth claim for relief, Plaintiff alleges Mr. Gause converted its Confidential Information to compete with Plaintiff, both during the term of the Agreements and after their termination. As above, Mr. Gause did not respond to Plaintiff's conversion allegations.

Under Virginia law, conversion is "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." Mackey v. McDannald, 842 S.E.2d 379, 387 (Va. 2020) (quoting United Leasing Corp. v. Thrift Ins. Corp., 440 S.E.2d 902, 905 (Va. 1994) (quoting Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359, 365 (Va. 1956))). While conversion "typically applies only to tangible property," the Supreme Court of Virginia has held that to "establish a conversion of intangibles, . . . the plaintiff must have both a property interest in and 'be entitled to immediate possession' of the documented intangible

13

property." Id. (quoting United Leasing Corp., 404 S.E.2d at 905) (internal citation omitted). "Only 'a clear, definite, undisputed, and obvious property right in a thing to which [the plaintiffs] are entitled to immediate possession [is] sufficient to support a claim of conversion.'" Id. (quoting United Leasing Corp., 404 S.E.2d at 905)).

Here, Plaintiff argues Mr. Gause impermissibly used the Confidential Information for his own profit when he competed against Plaintiff both during the term of the Agreements and following their termination. The Court agrees. First, it is undisputed that Plaintiff has a property interest in the Confidential Information, and upon the termination of the franchise relationship, is entitled to immediate possession. The Agreements provide franchisees "will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to [them] for purposes of developing and operating the Franchised Businesses pursuant to" the Agreements. (Doc. No. 61-3, p. 20). Further, following termination, franchisees agree not to use or disclose Plaintiff's "Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business."[10] (Doc. No. 61-3, p. 20).

Second, the record demonstrates that Mr. Gause converted Plaintiff's Confidential Information for its own benefit by wrongfully exerting dominion over the Confidential Information in a manner inconsistent with Plaintiff's rights. As explained above, both before and after the termination of the Agreements, Mr. Gause retained his Liberty phone number, hired employees he met at Liberty's tax training, and filed tax returns through Gause Enterprises for Liberty's customers. (Doc. No. 61-5, p. 78, 94, 33). In fact, Mr. Gause testified that after the termination,

---

[10] Following termination, franchisees must also immediately deliver to Plaintiff any originals and all copies of customer lists, tax returns, files, and records; deliver all copies of the Operations Manual and any updates. (Doc. No. 61-3, p. 18).

14

Case 3:21-cv-00543-FDW-DCK   Document 66   Filed 04/25/23   Page 14 of 19

approximately twenty-five to thirty percent of his Gause Enterprises customers were formerly Plaintiff's customers. (Doc. No. 61-5, p. 80). Thus, this wrongful retention of training, contact, and customer information is inconsistent with Plaintiff's property rights, and Plaintiff was thereby deprived of the exclusive use of the information because of Mr. Gause's actions. See E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., No. 3:09cv58, 2011 WL 4625760, at *6 (E.D. Va. Oct. 3, 2011). Therefore, Plaintiff has demonstrated, and Mr. Gause does not provide any evidence to the contrary, that Mr. Gause wrongfully converted Plaintiff's Confidential Information. Accordingly, Plaintiff is entitled to summary judgment on its Conversion (Count V) claim.

### D. Unjust Enrichment/Restitution (Count VI)

In its sixth cause of action for unjust enrichment/restitution, Plaintiff contends Mr. Gause misappropriated its Confidential Information and then used it in competition with Plaintiff, and he is therefore liable for any amounts so collected. Under Virginia law, to prevail on a claim of unjust enrichment, a plaintiff must satisfy three elements: "(1) the plaintiff a benefit conferred on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." James G. Davis Constr. Corp. v. FTJ, Inc., 841 S.E.2d 642, 640 (Va. 2020) (citing Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838 (Va. 2008)). However, "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." Id. at 647 (quoting CGI Fed. Inc. v. FCi Fed., Inc., 814 S.E.2d 183, 190 (Va. 2018)); see also Centex Constr. V. Acstar Ins. Co., 448 F. Supp. 2d 697, 707 (E.D. Va. 2006) ("Where the parties have entered into an express contract, they 'are entitled to have their rights and duties adjudicated exclusively by its terms.'" (quoting Vollmar v. CSX Trans., Inc., 705 F. Supp. 1154, 1176 (E.D. Va. 1989)). "Where an express contract exists between the parties, the

15

question of whether the contract bars an unjust enrichment claim is one of law we review de novo." CGI Fed. Inc., 814 S.E.2d at 190.

Here, Plaintiff alleges that it conferred a benefit to Mr. Gause, for which he knew he would have to pay, when they entered into the Agreements by divulging its Confidential Information, but that Mr. Gause failed to pay Plaintiff for that benefit. Specifically, Plaintiff contends that following termination, Mr. Gause actively solicited and serviced Plaintiff's customers, but that he failed to pay Plaintiff. While this is true, the Agreements expressly cover these actions:

> **Liquidated Monetary Damages.** If you fail to comply with either [the In-Term or Post-Term Covenant Not to Compete], you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 3 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1 - April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

(Doc. No. 61-3, p. 18). Thus, because it appears Plaintiff's claim for unjust enrichment is for breaches of the provisions expressly covered by the Franchise Agreements, a genuine issue of material fact exists regarding Plaintiff's Unjust Enrichment/Restitution (Count VI) claim. Accordingly, Plaintiff is not entitled to summary judgment on this cause of action.

### E.     Unfair Competition (Count VII)

Plaintiff's seventh cause of action alleges Mr. Gause has used, and will continue to improperly use, Plaintiff's Confidential Information and trade secrets in the operation of Gause Enterprises, and in direct competition with Plaintiff. "Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition." Monoflo Inter., Inc. v. Sahm, 726 F. Supp. 121, 127 (E.D. Va. 1989) (citing Benjamin T. Crump Co. v. J.L. Lindsay, Inc., 107 S.E.

16

Case 3:21-cv-00543-FDW-DCK   Document 66   Filed 04/25/23   Page 16 of 19

679, 684 (Va. 1921)). "The essential element of unfair [competition] is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is deceived, and the seller receives the profit which, but for such deception, he would not have received." Benjamin T. Crump, 107 S.E. at 684. Further, "[t]he threat of unfair competition must be directed 'not at the complaining party, but at its customers or other third parties.'" Power Home Solar, LLC v. Signora Solar, LLC, No. 3:20-cv-00042, 2021 WL 2856459, at *11 (W.D. Va. Aug. 30, 2021). Under these standards, the Court cannot say that Plaintiff is entitled as a matter of law to summary judgment on its Unfair Competition claim.

Plaintiff contends Mr. Gause improperly used its Confidential Information to allow Gause Enterprises to directly compete with Plaintiff, and that Mr. Gause is attempting to deceive Plaintiff's current and prospective customers. However, Mr. Gause testified that following his termination, when Plaintiff's customers contacted him, he informed them that he was no longer with Plaintiff, and that he had "moved on." (Doc. No. 61-5, p. 80). He alleges that after so informing these customers, "nobody asked" him for Plaintiff's contact information; instead, many of his long-term clients decided to follow him to Gause Enterprises. (Id. at 80–81). Plaintiff asserts that many of these clients believed they were calling a Liberty phone number, but that "rather than kindly inform[ing] these customers he could not help them, [Mr. Gause] solicited them using Liberty's marks and material, prepared their tax returns, charged them a fee, and Liberty received nothing." (Doc. No. 61, p. 15). While this may be true, these allegations "do not establish the 'essential element' of 'deception' under Virginia law, nor do they establish [Mr. Gause] held [himself] out to the public as" Liberty Tax. Power Home Solar, LLC, 2021 WL 3856459, at *11. Therefore, taking the evidence in the light most favorable to Mr. Gause, there is a genuine dispute of material fact as to whether Mr. Gause deceptively palmed off his services as those of Plaintiff's.

Accordingly, Plaintiff is not entitled to summary judgment as a matter of law on its Unfair Competition (Count VII) claim.

**F.     Relief Sought**

In its Motion for Summary Judgment, Plaintiff requests that this Court grant the relief sought in the Complaint, including a Permanent Injunction (see Count II and Count IX) and money damages in the amount of $65,920.00 plus pre- and post-judgment interest. (Doc. No. 61, p. 19). Additionally, the Complaint requests an accounting of Gause Enterprises' revenues and profits since November 19, 2013, and reasonable attorneys' fees and costs.[11] (Doc. No. 1, p. 25).

As outlined above, the Court has determined that Plaintiff is entitled to summary judgment against Mr. Gause as to Count I, Breach of the Franchise Agreements (Monetary Claim); Count IV, Violation of the DTSA; and Count V, Common Law Conversion. However, Plaintiff is not entitled to summary judgment against Mr. Gause as to Count VI, Unjust Enrichment/Restitution; and Count VII, Unfair Competition. The following causes of action remain pending: Count II, Breach of the Franchise Agreements (Equitable Claim) (Against Mr. Gause); Count III, Tortious Interference with Contract (Against Gause Enterprises); Count IV, Violation of the DTSA (Against Gause Enterprises); Count VI, Unjust Enrichment/Restitution (Against Both Defendants); and Count VII, Unfair Competition (Against Both Defendants); and Count IX, Request for Permanent Injunction (Against Both Defendants). Therefore, the Court declines to determine the appropriate relief, including damages and the issuance of a permanent injunction, until all claims are resolved.

---

[11] Specifically, the Complaint requests a monetary award that includes compensatory damages, expectancy damages, punitive damages, and disgorgement of profits. (Doc. No. 1, p. 25). While the Court declines to address damages at this time, the Court notes that Section 17.e of the Agreements, "No Punitive Damages," states: "In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages." (Doc. No. 61-3, p. 24; see also Doc. No. 61-2, p. 19–20; Doc. No. 61-4, p. 24).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 60), is **GRANTED IN PART and DENIED IN PART**:

    a. Summary judgment in favor of Plaintiff is **GRANTED** as to Counts I, IV, and V, as against Defendant Charles Gause;

    b. Summary judgment against Defendant Charles Gause is **DENIED** as to Counts VI and VII;

    c. Plaintiff's Motion for Summary Judgment is **DENIED AS MOOT** to the extent it seeks summary judgment against Defendant Gause Enterprises LLC; and

    d. The Court **DEFERS** ruling on damages and Plaintiff's request for a preliminary injunction in Counts II and IX and will do so following the trial and/or simultaneously with its ruling on a motion for default judgment. Accordingly, the Court will entertain a properly filed and supported motion for default judgment—which should include a proposed order outlining the specific relief sought—either following the trial in this matter, or following the resolution of any motions to dismiss pursuant to Rule 41(a)(2) that Plaintiff may file.

2. The parties shall **TAKE NOTICE** that this matter will proceed to trial on the limited issues of Unjust Enrichment/Restitution (Count VI) and Unfair Competition (Count VII) as against Defendant Charles Gause.

**IT IS FURTHER ORDERED** that trial in this case is **CONTINUED** to the mixed trial term beginning on Monday, July 10, 2023. The parties shall submit their Pretrial Submissions no later than Monday, June 19, 2023. Docket Call will take place at 9:01 a.m. on July 10, 2023, and the Final Pretrial Conference will take place following Docket Call, at 9:15 a.m. on July 10, 2023, in Courtroom #5B of the Charles R. Jonas Federal Building, located at 401 West Trade Street, Charlotte, North Carolina, 28202.

**IT IS SO ORDERED.**

Signed: April 25, 2023

Frank D. Whitney
United States District Judge