**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES GAUSE and GAUSE ENTERPRISES LLC d/b/a MR. CHARLES TAX,<br><br>Defendants. | Case No.: 3:21-cv-543-FDW-DCK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

JTH Tax, LLC d/b/a Liberty Tax ("Liberty") submits this memorandum of law in support of its motion for default judgment against Defendant Gause Enterprises, LLC ("Gause Enterprises") on Counts III (Tortious Interference), IV Defend Trade Secrets Act ("DTSA"), and IX (request for a permanent injunction) in Liberty's Verified Complaint. Liberty also kindly requests that the Court enter judgment on Counts II and IX with respect to Defendant Charles Gause ("Defendant Gause"), which the Court deferred ruling on in its Order Granting in Part Liberty's Motion for Summary Judgment. [DE 66].

### I.     INTRODUCTION

This case involves claims by Liberty that Gause, a former franchisee of Liberty, breached the non-competition and non-solicitation provisions of the Franchise Agreements between Gause and Liberty, and that Gause Enterprises, a single-member LLC controlled by Gause, was complicit in the breaches. In December of 2022, Liberty moved for default judgment, and in the alternative for summary judgment. [DE 58 and 60]. Both motions sought the requested relief against both

Defendants. The Court construed the motion for default judgment as a request for entry of default, and granted same against Gause Enterprises. [DE 64]. The Clerk subsequently entered default against Gause Enterprises. [DE 65]. The Court also granted Liberty's motion for summary judgment as to Counts I, IV, and V against Gause. [DE 66]. The Court denied Liberty's motion for summary judgment with respect to Counts VI and VII. *Id.* The Court deferred ruling on Counts II and IX, which seek injunctive relief. *Id.* Finally, the Court noted that Count VIII, which sought a preliminary injunction, was resolved by the stipulated injunction filed by the parties, and the Court partially granted Liberty's motion for a preliminary injunction. *Id.*

Presently, Liberty seeks to obtain a default judgment against Gause Enterprises on Counts III, IV, and IX of the Complaint. If granted, Liberty will have obtained either summary or default judgment on Counts I, III, IV, and V.[1] Liberty also respectfully requests the Court to enter ruling on its summary judgment motion as to Counts II and IX at this time. Following entry of these final judgments on Counts I, II, III, IV, V, and IX, Liberty intends to move for dismissal of this action under Rule 41(a)(2), as contemplated by the Court's Order on Liberty's motion for summary judgment. Because many courts have held that Rule 41(a)(2) may only be used to dismiss entire actions and not individual claims, final judgment on all other claims is necessary before Liberty moves to dismiss.[2]

---

[1] Counts I, II, and IV are against both Defendants. Count III is against Gause Enterprises only.

[2] Liberty is mindful that the Court stated it would entertain a properly filed motion for default judgment "following the resolution of any motions to dismiss pursuant to Rule 41(a)(2)." While Liberty is loath to depart from the order of filings contemplated by the Court's Order, the case law from sister circuits have uniformly held that dismissal under 41(a)(2) applies to entire actions, and not individual claims. *See e.g.*, *Padilla v. Smith*, 53 F.4th 1303 (11th Cir. 2022). While the Fourth Circuit has not ruled on whether dismissal under Rule 41(a)(2) applies to individual claims, the 2nd, 5th, 7th, 9th, 10th, and Federal Circuits have all held that Rule 41(a)(2) applies to entire actions instead of individual claims. *See Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir. 1953); *CBX Resources, L.L.C. v. ACE American Ins. Co.*, 959 F.3d 175 (5th Cir. 2020); *Taylor v. Brown*, 787 F.3d 851 (7th Cir. 2015); *ECASH Technologies, Inc. v. Guagliardo*, 35 Fed. Appx. 498 (9th Cir. 2002); *Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122 (10th Cir. 1996); *Gronholz v. Sears, Roebuck and Co.*, 836 F.2d 515 (Fed. Cir. 1987).

Liberty's Motion should be granted because the well-pleaded facts of its Verified Complaint, which the Court accepts as true in light of the default by Gause Enterprises, states a claim for which Liberty is entitled to relief on Counts III, IV, and IX. Further, by granting the instant motion and obviating the need for trial, the Court can preserve judicial resources and further the interest of judicial economy. Counts VI and VII would not entitle Liberty to any additional relief it cannot obtain by prevailing on the other Counts; therefore Liberty will promptly move to dismiss the action once final judgment is entered on the other pending claims.

## II. STATEMENT OF FACTS

Liberty has laid out the history between the parties in its previous briefing, therefore only a concise recitation is provided here. Defendant Gause became a Liberty franchisee in 2013 by purchasing his first "territory" known as NC256. [DE 1 ¶ 19]. He bought another territory, NC239, a few years later in 2016. [DE 1 at ¶ 20]. In 2019, Defendant Gause renewed his Franchise Agreement for the NC256 territory for another five years. [DE 1 ¶ 19]. The Franchise Agreements for both territories are essentially the same. Both Franchise Agreements are for a term of five years. [DE 1 ¶ 19]. They entrust to the franchisee, in this case Defendant Gause, confidential and proprietary methods, know-how, and information. [DE 1 ¶¶ 21-22]. In exchange for the use of Liberty's branding, trademarks, and methods, Defendant Gause agreed to pay Liberty royalties and advertising fees. [DE 1 ¶ 23]. Further, Defendant Gause agreed not to compete with Liberty within 25 miles of each territory for two years, as well as to refrain from soliciting Liberty's customers or employees, including franchise employees, for two years. [DE 1 ¶¶27-28]. These

---

Accordingly, Liberty respectfully asks the Court to consider this motion before any motion to dismiss under Rule 41(a)(2).

restrictive covenants in the Franchise Agreements are necessary to prevent franchisees becoming Liberty franchisees, learning the ins and outs of the tax business, only to open a competing enterprise at the first chance—which is exactly what Defendant Gause did in this case.

In 2021, while Defendant Gause was still a current Liberty franchisee with two territories, he began operating a competing tax business through a single-member LLC that he controls, Gause Enterprises, LLC. [DE 1 ¶ 41]. Because Gause Enterprises is a single-member LLC under the exclusive control of its owner, Defendant Gause, his knowledge and actions are attributable to Gause Enterprises. [DE 1 ¶ 43].

Accordingly, Gause Enterprises knew about Defendant Gause's Franchise Agreements with Liberty, including the provisions prohibiting him from competing with Liberty, prohibiting him from soliciting Liberty's customers and employees, obligating him to keep Liberty's confidential information secret, and requiring him to pay Liberty royalties. [DE 1 ¶ 85]. Notwithstanding this knowledge, Gause Enterprises began operating a competing business using the same phone number, customer lists, know-how, and methods that Defendant Gause learned as a Liberty franchisee. [DE 1 ¶ 86]. Gause Enterprises hired the same employees who worked at the Liberty franchise locations and serviced many of Liberty's customers that had their taxes filed by the Liberty franchise the year before. [DE 1 ¶ 86]. In short, Gause Enterprises did exactly what the restrictive covenants in the Franchise Agreements aim to prevent—it raided Liberty for its knowledge and business acumen, then appropriated that knowledge and information to divert business away from Liberty. [DE 1 ¶ 101]. Liberty was harmed by this tortious interference and misappropriation because its customers were poached, royalty payments were not made, and its geographic reach was reduced. [DE 1 ¶ 102].

Gause Enterprises' tortious interference and violation of the DTSA justify a permanent injunction against Defendant Gause. The DTSA expressly allows for injunctive relief and the equitable powers of courts are often called upon to enjoin defendants from engaging in ongoing tortious conduct. Furthermore, it recently came to the attention of Liberty's counsel that Defendant Gause is operating an income tax preparation business as "Mr. Charlez Tax" in direct contravention of the stipulated injunction and this Court's orders.[3] By flouting the stipulation (once again ignoring a binding agreement he made) and repeatedly ignoring this Court's orders, Defendants make clear that they are committed to violating the non-competition provisions of the Franchise Agreements. Plainly, a permanent injunction for both Defendants for two years from the date of this Order is warranted.

**III.    ARGUMENT**

  *a. Standard of Review*

Rule 55 allows for a two-step process for litigants to obtain default judgment in appropriate cases. Fed. R Civ. P. 55. First, upon a showing to the clerk or court that a party has defaulted, an entry of default is entered by the clerk. Fed. R. Civ. P. 55(a)-(b). Upon an entry of default by the clerk, the party moving for default judgment can seek a default judgment from the court. *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 581 (E.D. Va. 2020).[4] When a party defaults, all of the well-pleaded factual assertions in the Complaint are taken as true. *Id.* Upon deeming all well-pleaded factual allegations in the Complaint as true, the Court must determine if the well-

---

[3] Defendant Gause advertises his new business on his website, thegausegroup.com and lists its address as 9731 Southern Pines Blvd. Charlotte, NC 28273.
[4] Citation is made to Virginia authorities because the Franchise Agreements contain a choice of law provision whereby Liberty and Defendant Gause agreed to Virginia law as the governing law in this case. The Court recognized Virginia law as the governing law in its Order dismissing Defendants' counterclaims. [DE 43].

- 5 -

pleaded facts satisfy the elements of the claims for which default judgment is sought. *Id.* at 582. Accordingly, so long as the factual allegations in Liberty's Complaint satisfy the elements of Counts III, IV, and IX, then default judgment against Gause Enterprises is appropriate in this case.

> b. *Liberty is Entitled to Default Judgment Against Gause Enterprises for its Claim of Tortious Interference (Count III)*

In 2014, upon a certified question form the Fourth Circuit regarding tortious interference under Virginia law, The Supreme Court of Virginia defined the elements of a tortious interference claim. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216, 754 S.E.2d. 313, 318 (Va. 2014). The elements of a prima facie tortious interference with contract claim under Virginia law are: "1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted." *Id.* If the contract at issue is terminable at-will, or is merely a contract or a business expectancy, then the plaintiff musty show that the defendant used "improper methods" in its tortious interference. *Id.* The misuse of inside or confidential information is one of the many "improper methods" recognized by Virginia courts. *Dunn, McCormack & Macpherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011).

First, Liberty states a prima facie case for tortious interference against Gause Enterprises in the Verified Complaint. The Franchise Agreements are valid contracts between Liberty and Defendant Gause. [DE 1 ¶ 83]. Gause Enterprises, the interfering party, knew about the Franchise Agreements because its sole member, Defendant Gause, is a party to them. [DE a ¶¶ 84-85]. Gause Enterprises caused the breach of the Franchise Agreements by operating a competing tax preparation business that Defendant Gause oversaw and by hiring the same employees that worked

for the Liberty franchises. [DE 1 ¶¶ 86-87]. Gause Enterprises also caused Defendant Gause to fail to pay his contractually obligated royalties under the Franchise Agreements for the tax returns that Defendant Gause and the other Gause Enterprises employees prepared for Liberty customers. [DE 1 ¶ 54]. Finally, Liberty was damaged by the tortious interference because it stopped receiving royalty payments from Defendant Gause, had two fewer franchise territories in operation thereby reducing Liberty's geographic reach, and having a former franchisee in direct competition with them. [DE 1 ¶ 79]. Clear from the above, Liberty plainly states a prima facie case for tortious interference under Virginia law.

Next, the Franchise Agreements are not terminable at will and are more than a mere business expectancy. In order to terminate the contract, Liberty must determine that the franchisee committed one or more defaults under the contract, and then Liberty may terminate with or without a notice and opportunity to cure depending on the severity of the default. [DE 6-2 at Section 8(b)-(c)]. If a franchisee wants to terminate the Franchise Agreement, the franchisee can sell the territory or decline to renew the Franchise Agreement at the expiration of the five-year term. [DE 6-2 at Section 8(a). Nor are the Franchise Agreements mere business expectancy contracts. The Franchise Agreements contemplate a long-term franchisor/franchisee relationship and contain several non-monetary terms. Most obvious in this case are the non-monetary restrictive covenants that prevent franchisees from competing with Liberty or soliciting its employees. [DE 6-2 at Section 9 and 10]. The Franchise Agreements provide for more than just a business expectancy—they exist to protect Liberty's brand and methods from abuse and appropriation.

However, even if the Court were to determine the Franchise Agreements are terminable at will or are merely a contractual or business expectation for Liberty, Gause Enterprises' misuse of

Liberty's insider and confidential information was improper under Virginia law. When Gause Enterprises began competing with Liberty, it kept Liberty's phone numbers, methods learned at Liberty trainings, and most importantly, Liberty's customer lists. [DE 1 ¶ 86]. Gause Enterprises serviced a substantial number of Liberty customers—whom he only knew and had a business relationship with because of his status as a Liberty franchisee—while pocketing the entire fee and refusing to pay royalties. [DE 1 ¶ 86]. In granting Liberty's motion for summary judgment against Defendant Gause on its claim for violations of the DTSA, the Court recognized the sensitive nature of this confidential information and Defendant Gause's misuse of it. [DE 66 at 12-13]. Because Defendant Gause used Gause Enterprises as the vehicle for appropriating all of the confidential information to compete with Liberty both before and after Liberty terminated the Franchise Agreements, Gause Enterprise used improper methods when causing Defendant Gause to breach his Franchise Agreements with Liberty.

Considering the above, default judgment against Gause Enterprises for Liberty's tortious interference claim is proper.

> *c. Liberty is Entitled to Default Judgment Against Gause Enterprises for its Defend Trade Secrets Claim (Count IV)*

As the Court outlined in its Order granting Liberty's motion for summary judgment against Defendant Gause, the DTSA protects Confidential Information from abuse and appropriation. [DE 66 at 10]. To prevail on a claim under the DTSA a plaintiff must "establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *Id.* (citing *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 141 (4th Cir. 2023)). The Court already established that the "Confidential Information" in this case is a trade secret that implicates interstate commerce. [DE 66 at 12-13]. Accordingly, the only

- 8 -

Case 3:21-cv-00543-FDW-DCK   Document 68   Filed 06/07/23   Page 8 of 12

remaining question is whether the misappropriation that the Court already attributed to Defendant Gause can also be attributed to Gause Enterprises. The evidence is clear that it can.

The Court also acknowledged that "by hiring and training his employees, by filing tax returns for Plaintiff's customer's through Gause Enterprises—both during the term of his [Franchise] Agreements and following their termination—and by using [Liberty's] trade secrets beyond the scope of the [Franchise] Agreements, Mr. Gause misappropriated Plaintiff's trade secrets." [DE 66 at 12-13]. This makes clear the Gause Enterprises was a co-conspirator with Defendant Gause in misappropriating the trade secrets at issue.

The DTSA is structured to apply to both divulgers of confidential information, and the people or entities that use the unlawful disclosure. 18 U.S.C. § 1839(5) defines misappropriation as the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II).

Here, the evidence is clear that Gause Enterprises used Liberty's trade secrets without express or implied consent. It is further clear that at the time Gause Enterprises used the trade secrets, it knew the trade secret was acquired as a result of Defendant Gause signing the Franchise Agreements which prohibited the disclosure and limited the use of the trade secrets. Because Defendant Gause is the sole member of Gause Enterprises, it is impossible for Gause Enterprise to have used the trade secrets without knowledge of their status as confidential information.

Further, longstanding Fourth Circuit precedent that pre-dates the DTSA holds that liability is justified for the unlawful use of a trade secret by a person who learned it as a result of another's

unlawful disclosure of the trade secret. *Colgate-Palmolive Co. v. Carter Products, Inc.*, 230 F.2d 855. *Colgate* involved Colgate hiring an employee it knew to be bound by confidentiality regarding a patented shaving cream for the purpose of having him develop a similar product for Colgate. *Id*. at 863. The Court held that even though Colgate was not in a contractual relationship with the competitor, by hiring one of its employees it knew to be covered by a confidentiality agreement to do substantially similar work was improper misappropriation of a protected trade secret.

Here, Gause Enterprises simply used Defendant Gause, a former franchisee, to transfer all of the know-how and confidential information that he learned from Liberty to Gause Enterprises for its use and benefit. The normally two-sided coin of disclosure and use melts into a single one-sided coin in this case due to Defendant Gause being the sole member of his LLC. Accordingly, default judgment against Gause Enterprises on Count IV is appropriate in this case.

## IV. CONCLUSION

For the reasons stated herein, Liberty has met its burden of showing that the well-pleaded facts in the Verified Complaint, accepted as true by virtue of default by Gause Enterprises, state a valid claim for relief under Counts III and IV of the Complaint. Accordingly, default judgment against Gause Enterprises is proper for Liberty's Tortious Interference and DTSA claims. For all of these reasons, Liberty also respectfully requests the Court enter ruling on Counts II and IX in Liberty's motion for summary judgment, which the Court deferred ruling on previously. Liberty will swiftly dismiss the remainder of this action once final judgment is entered on Counts II, III, IV and IX.

Respectfully submitted this 7th day of June, 2023.

                         **GORDON REES SCULLY MANSUKHANI, LLP**

             By:     */s/ Allison J. Becker*
                         Allison J. Becker
                         N.C. State Bar No.: 41993
                         Benjamin L. Williams
                         N.C. State Bar No.: 53665
                         421 Fayetteville Street, Suite 330
                         Raleigh, North Carolina 27601
                         Telephone: 984-242-1796
                         Facsimile: 919-741-5840
                         abecker@grsm.com
                         blwilliams@grsm.com
                         *Attorneys for JTH Tax LLC d/b/a Liberty Tax Service*

## CERTIFICATE OF SERVICE

      I CERTIFY that on this 7th day of June, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to such to all counsel of record. I further certify that a copy of the foregoing was sent via U.S. Mail to the following individuals:

Mr. Charles Gause
7016 McLothian Ln.
Charlotte, NC 28078
charles@gauseassociates.com

                                     **GORDON REES SCULLY MANSUKHANI, LLP**

              By:    */s/ Allison J. Becker*
                         Allison J. Becker